Eugene Y. Turin (SB # 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Putative Class Members*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MIKE GOLDSTEIN, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>RUMBLE INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:25-cv-06304 MWF (SKx)<br><br>**FIRST AMENDED COMPLAINT**<br><br>**1. Violation of California Invasion of Privacy Act, Cal. Pen. Code § 630 *et seq.***<br><br>DEMAND FOR JURY TRIAL |

## FIRST AMENDED COMPLAINT

Plaintiff Mike Goldstein ("Plaintiff") brings this First Amended Complaint against Defendant Rumble Inc. ("Defendant", "Rumble" or "rumble.com"), to stop Defendant's unlawful tracking and disclosure of its rumble.com website visitors' statutorily protected information and to seek redress for all those who have been harmed by Defendant's misconduct. In particular, Defendant shares its website visitors' video viewing data with third-party parties without first obtaining valid consent. Plaintiff alleges as follows based on his individual personal knowledge, acts,

and experiences and as to all other matters, on information and belief, including an investigation by his attorneys.

## NATURE OF THE CASE

1. This is a class action suit brought against Defendant for privacy violations pursuant to the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code. § 630, *et seq*.

2. Defendant owns and operates rumble.com (the "Website"), an online video platform which provides its visitors with various forms of video content.

3. Unbeknownst to its Website visitors, Defendant has knowingly installed pixels and other tracking technologies developed by third party advertisers, including the Meta Pixel, to intercept, collect, and disclose its Website visitors' personally identifiable information ("PII") relating to specific videos that the Website visitors have viewed.

4. Defendant knowingly discloses and aids and abets the interception of this information to third-party tracking, analytic, and advertising providers so that they can target specific users with tailored advertisements based on their viewing history and website activity.

5. Defendant discloses, and allows other third parties to intercept, its Website visitors' statutorily protected information and PII without their knowledge or consent. In doing so, Defendant has violated CIPA, and the privacy rights of Plaintiff and the other Class members.

6. Accordingly, Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Defendant's practices of knowingly disclosing and aiding the interception of its Website visitors' statutorily protected information to third-parties.

## JURISDICTION AND VENUE

7. This Court may assert subject matter jurisdiction over Defendant pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because at least one Class member is of diverse citizenship from Defendant, there are more than one hundred Class members nationwide, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs.

8. This Court has personal jurisdiction over Defendant because a substantial part of the events giving rise to the claims asserted herein occurred in this District, as Plaintiff resides in this District and was subject to Defendant's unlawful conduct in this District.

9. Venue is proper within this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

## PARTIES

10. Plaintiff Mike Goldstein is a resident within the State of California.

11. Defendant Rumble Inc. is a corporation organized and existing under the laws of the State of Delaware and doing business in the State of California.

## COMMON FACTUAL ALLEGATIONS

### I. The California Invasion of Privacy Act

12. CIPA was enacted "to protect the right of privacy of the people of [California]." Cal. Penal Code § 630. The California Legislature was concerned about emergent technologies that allowed for "eavesdropping upon private communications," believing such technologies "created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id.*

13. As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any

unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

14. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

15. § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *Jee Javier v. Assurance IQ, LLC,* 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

16. Individuals may bring an action under CIPA §§ 631 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1).

## II. Defendant Intercepted and Disclosed its Website Visitors' Contents of their Electronic Communications to Third Parties.

17. Defendant owns and operates rumble.com, an online video platform with various forms of video content.

18. Importantly, Website visitors are not provided notice or specifically asked to consent to Defendant sharing and disclosing, or aiding and abetting in the interception of, their PII and the contents of their communications to third parties, including information which identifies them as having viewed or requested specific video content.

19. However, despite not obtaining informed consent from its Website visitors, Defendant discloses, and aids in the interception of, the contents of their electronic communications to various third parties.

20. Specifically, a live data-traffic analysis of Defendant's Website shows that Defendant incorporated and installed third-party tracking technologies into its Website so that whenever visitors watch video content, their PII and the contents of their electronic communications are intercepted in real time while in transit by such third parties, including by Facebook via its Meta Pixel.

21. The Meta Pixel is a piece of code that online media providers, like Defendant, can integrate into their websites. Once activated, the Meta Pixel tracks users' PII (such as the users' identity and the specific video content they requested) and the type of actions they take on the website and disseminates that information to Facebook. Therefore, when one of Defendant's Website visitors requests to watch a video on rumble.com, the Meta Pixel sends that video request, along with the person's PII and identity, to Facebook.

22. For example, if a Website visitor were to request to watch a video stream of a streaming content creator such as "Dr. Disrespect" playing the videogame "Tarkov," Defendant would disclose that information in the form of a URL request (as shown below), along with the identity of the Website visitor:




23. Or, if a Website visitor were to request to watch a video discussing Bitcoin being the solution to America's and China's debt crisis, Defendant would disclose that information in the form of a URL request (as shown below), along with the identity of the Website visitor:




24. Thus, Defendant collects, discloses, and aids and abets in the collection and disclosure of the contents of its Website visitors' communications, including information identifying that a Website visitor has requested specific video content.

25. Defendant does not, however, obtain the Website visitors' prior consent to disclose such information.

26. Defendant's Website visitors expect that they are communicating directly with Defendant via Defendant's Website, however, the contents of their communications with the Website are in fact being disclosed to, and intercepted by, undisclosed third parties including Facebook.

27. Facebook independently uses data obtained by the Meta Pixel from Rumble.com and other websites to create profiles of website visitors based on their

internet activities to allow Facebook's clients to better target people with advertisements.

28. For example, when investigative reporters visited a gambling website which had the Meta Pixel installed, "they were bombarded with Facebook ads for gambling websites, indicating that they had been profiled by Meta as someone interested in gambling as a result of the unlawful data sharing. In a single browsing session, they were shown gambling ads from 49 brands – *not just websites that had shared their data unlawfully, but others too* [emphasis added]."[1]

29. Thus, Facebook acts as an independent third party, independently using the information it obtains from intercepting Plaintiff's and other Website visitors' communications with Defendant to assist other Facebook advertising clients and increase Facebook's revenues.

30. Therefore, Defendant aided and conspired with third party tracking entities to intercept its Website visitors' electronic communications, because Defendant knowingly installed tracking technologies on its Website and knew such communications would be intercepted as a result.

31. As a result, Defendant has violated the CIPA.

## **FACTS SPECIFIC TO PLAINTIFF**

32. Plaintiff has visited rumble.com on several occasions within the past year.

33. Plaintiff does not have an account on Defendant's Website nor does he have a subscription.

34. At all relevant times, Plaintiff has been a Facebook account holder.

35. Plaintiff has used Defendant's Website to view prerecorded video

---

[1] Revealed: gambling firms secretly sharing users' data with Facebook without permission, The Guardian (Feb. 8, 2025), https://www.theguardian.com/society/2025/feb/08/gambling-firms-secretly-shared-users-data-with-facebook-without-permission (last visited Nov. 17, 2025).

materials and live video materials within the past year.

36. Each time Plaintiff viewed video content on Defendant's Website, Defendant knowingly and intentionally disclosed, and aided and abetted in the interception of, Plaintiff's PII and the contents of his electronic communications, including specifically his viewing history and personally identifying information, as described in detail above, to third parties.

37. Plaintiff never specifically and separately consented, agreed, authorized, or otherwise permitted Defendant to disclose, and aid in the interception of, his PII to third parties.

38. To this day, Plaintiff is unaware of the status of his PII and the contents of his electronic communications, to whom it has been disclosed, and who has possession and retained his PII as a result of Defendant's illegal conduct.

39. By intercepting and aiding third parties to intercept Plaintiff's contents of his electronic communications, which reveals both his identity and the videos that he viewed and requested, Defendant has intentionally and knowingly violated Plaintiff's privacy rights.

40. As such, Plaintiff is entitled to statutory damages.

## **CLASS ALLEGATIONS**

41. Plaintiff brings this action individually and on behalf of a Class (the "Class") defined as follows:

> Class: All persons within the state of California who, during the relevant limitations period, visited www.rumble.com and requested or viewed video contents.

42. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

43. Upon information and belief, there are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class are currently unknown to Plaintiff, the members can be easily identified through Defendant's records.

44. Plaintiff's claims are typical of the claims of the members of the Class Plaintiff seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's privacy violations.

45. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

(a) Whether Defendant knowingly disclosed Class members' personal video viewing information to third parties;

(b) Whether Defendant knowingly disclosed the contents of Class members' electronic communications to third-parties;

(c) Whether Class members provided consent to Defendant's disclosure of their communications to third parties;

(d) Whether Defendant aided third parties in the interception of Class members' communications on its Website;

(e) Whether the Class members are entitled to damages and other relief as a result of Defendant's conduct.

46. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to

multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

47. Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class.

48. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## FRAUDULENT CONCEALMENT AND TOLLING

49. The applicable statute of limitations are tolled by virtue of Defendant's knowing and active concealment of the facts alleged above. Plaintiff and the other Class members were ignorant of the information essential to the pursuit of these claims, without any fault or lack of diligence on their own part.

50. At the time the action was filed, Defendant was under a duty to disclose the true character, quality, and nature of its activities to Plaintiff and the Class. Defendant is therefore estopped from relying on any statute of limitations.

51. Defendant's fraudulent concealment is common to the Class.

## COUNT ONE

**Violations of the California Invasion of Privacy Act**
**Cal. Pen. Code § 631(a)**
**(On behalf of Plaintiff and the Class)**

52. Plaintiff hereby incorporates the above allegations by reference as

though fully set forth herein.

53. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Therefore, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant "by means of any machine, instrument, contrivance, or in any other manner," committed any of the following:

> (i) intentionally tapped, or made any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, cable, or instrument of any internal telephonic communication system;
>
> *or*
>
> (ii) willfully and without consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state;
>
> *or*
>
> (iii)
>
> uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained;
>
> *or*
>
> (iv) aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section. Cal. Pen. Code. § 631 (a).

54. The third-party activity tracking technologies Defendant programmed into its Website are each a "machine, instrument, contrivance, or … other manner"

used to read or learn the contents or meaning of messages, reports, or communications between Plaintiff and the other Class members and Defendant.

55. Defendant's third-party tracking providers were third parties to communications between Plaintiff and the other Class members and Defendant.

56. Defendant's third-party tracking providers willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications between Plaintiff and the Class members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at a place within California.

57. Defendant aided and conspired, agreed with, employed, permitted, or otherwise enabled its third-party tracking providers to wiretap Plaintiff's and the other Class members' PII and the contents of their electronic communications with Defendant. Defendant knew that the third-party tracking technology it installed on its Website would result in the disclosure of user communications to third parties, as increasing its advertising presence on other platforms was one of Defendant's purposes for implementing such technology.

58. Plaintiff and the other Class members did not provide their prior consent to such third parties' access, interception, reading, learning, recording, collection, and usage of their electronic communications. Nor did Plaintiff and the other Class members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling its third-party vendors' conduct.

59. Plaintiff and the other members of the Class seek all relief available under Cal. Pen. Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of and the Class, prays for

the following relief:

1. An order certifying the Class as defined above;

2. An order declaring that Defendant's conduct violates CIPA;

3. An order enjoining Defendant from continuing to engage in the unlawful conduct and practices described herein;

4. An award of statutory damages under CIPA to the Class;

5. For punitive damages, as warranted, in an amount to be determined at trial;

6. An award of attorney's fees and costs; and

7. Award such further relief as the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

DATED: December 5, 2025

Respectfully submitted,

MIKE GOLDSTEIN, individually and on behalf of similarly situated individuals

By: /s/ *Eugene Y. Turin*
One of Plaintiff's Attorneys

Eugene Y. Turin (SB # 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: 312-275-7895
eturin@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*