Gregory J. Dubinsky (*admitted pro hac vice*)
gdubinsky@hsgllp.com
Nicholas H. Hallock (*admitted pro hac vice*)
nhallock@hsgllp.com
HOLWELL SHUSTER
& GOLDBERG LLP
425 Lexington Ave., 14th Floor
New York, NY 10017
Telephone: (646) 837-5151
Facsimile: (646) 837-5150

Andrew B. Breidenbach, Esq. (State Bar No. 281586)
abreidenbach@tocounsel.com
THEODORA ORINGHER PC
1840 Century Park East, Suite 500
Los Angeles, California 90067-2120
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

Attorneys for Defendant Rumble Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MIKE GOLDSTEIN, individually and on behalf of similarly situated individuals, | Case No. 2:25-cv-06304 MWF (SKx) |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| vs. | |
| RUMBLE INC., | Trial Date:      None Set |
| Defendant. | |

## **TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................1

II.     ARGUMENT ......................................................................................................3

        A.    Goldstein Has Still Not Pled that Rumble Aided and Abetted the Meta Pixel. ........................................................................................4

        B.    Goldstein Has Not Pled that the Meta Pixel Read the "Contents" of His (or Anyone Else's) Communications. ......................................7

        C.    Goldstein Has Not Pled that the Meta Pixel Intercepted His Communications "In Transit" ...............................................................11

        D.    Section 631(a)'s Private Right of Action Is Preempted......................14

III.    CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................4, 5, 13

*AT&T Corp. v. Iowa Utilities Bd.*,
   525 U.S. 366 (1999)......................................................................................16

*Barnhart v. Sigmon Coal Co.*,
   534 U.S. 438 (2002)......................................................................................15

*Bunnell v. Motion Picture Ass'n of America*,
   567 F. Supp. 2d 1148 (C.D. Cal. 2007) ....................................................3, 13, 15

*Castillo v. Costco Wholesale Corp.*,
   2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)......................................................9

*Chamber of Commerce v. Bonta*,
   62 F.4th 473 (9th Cir. 2023) .........................................................................14

*Cole v. Quest Diagnostics*,
   2024 WL 3272789 (D.N.J. July 2, 2024) .............................................................10

*Cole v. Quest Diagnostics*,
   2025 WL 88703 (D.N.J. Jan. 14, 2025)............................................................10, 11

*D'Antonio v. Smith & Wesson*,
   2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ..........................................................7

*Doe v. Eating Recovery Center*,
   806 F. Supp. 3d 1109 (N.D. Cal. 2025)................................................................3

*Esparza v. UAG Escondido A1*,
   2024 WL 559241 (S.D. Cal. Feb. 12, 2024)..........................................................13

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992).......................................................................................14

*Gershzon v. Meta Platforms*,
   2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .........................................................9

*Graham v. Noom*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021)..................................................................6

ii

*Gray v. Luxottica of America*,
  2024 WL 5689566 (C.D. Cal. Dec. 16, 2024).........................................5, 6, 12, 13

*Heiting v. Taro Pharms. USA*,
  728 F. Supp. 3d 1112 (C.D. Cal. 2024)..........................................................8, 12

*Heiting v. Taro Pharms. USA*,
  2024 WL 3738055 (C.D. Cal. July 31, 2024).........................................................6

*In re Facebook Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ................................................................2, 9, 11

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
  794 F. Supp. 2d 1067 (N.D. Cal. 2011),
  *aff'd sub nom. Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013) ......................14

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022)...................................................................9

*In re NSA Telecomms. Records Litig.*,
  483 F. Supp. 2d 934 (N.D. Cal. 2007)...........................................................14-15

*In re Vizio Consumer Privacy Litig.*,
  2017 WL 11420284 (C.D. Cal. July 25, 2017).....................................................10

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ...............................................................2, 8, 11

*Insolvency Servs. Grp. v. Federal Express*,
  2014 WL 12613262 (C.D. Cal. May 7, 2014).......................................................15

*Jappa v. California*,
  2009 WL 1396364 (S.D. Cal. May 15, 2009) ........................................................8

*Kearney v. Salomon Smith Barney*,
  39 Cal. 4th 95 (2006) ..........................................................................................15

*Licea v. American Eagle Outfitters, Inc.*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023).......................................................*passim*

*Licea v. Cinmar, LLC*,
  659 F. Supp. 3d 1096 (C.D. Cal. 2023).......................................................*passim*

*Mata v. Zillow Group*,
  2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ............................................6, 10, 13

iii

*Ocean S. v. L.A. Cnty.*,
  2024 WL 3973047 (C.D. Cal. June 11, 2024) ........................................................ 7

*Patton v. Forest Labs.*,
  2017 WL 10439658 (C.D. Cal. Nov. 1, 2017) ...................................................... 16

*People v. Conklin*,
  12 Cal. 3d 259 (1974) ........................................................................................ 15

*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
  579 U.S. 115 (2016) ........................................................................................... 16

*Rogers v. Ullrich*,
  52 Cal. App. 3d 894 (1975) .................................................................................. 6

*Ruiz v. Nat'l City Bank*,
  2010 WL 1006412 (E.D. Cal. Mar. 17, 2010) ...................................................... 16

*Saleh v. Nike*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................. 10

*Smith v. Google, LLC*,
  735 F. Supp. 3d 1188 (N.D. Cal. 2024) ................................................................. 9

*Sweeny v. Toyota Motor Sales, USA*,
  2023 WL 2628697 (C.D. Cal. Feb. 9, 2023) ........................................................ 13

*Toy v. Life Line Screening of Am.*,
  2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ....................................................... 6

*Tysman v. Kachikian*,
  2009 WL 10698361 (C.D. Cal. May 8, 2009) ............................................. 3, 14, 16

*United States v. Ayres*,
  76 U.S. (9 Wall.) 608 (1869) .............................................................................. 11

*United States v. Gonzalez-Mendez*,
  150 F.3d 1058 (9th Cir. 1998) ............................................................................ 15

*United States v. Recio*,
  371 F.3d 1093 (9th Cir. 2004) ............................................................................ 11

*Valentine v. NebuAd*,
  804 F. Supp. 2d 1022 (N.D. Cal. 2011) ............................................................... 14

iv

*Wyeth v. Levine*,
    555 U.S. 555 (2009)................................................................................................15

*Yoon v. Lululemon USA*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...................................................................8

**Statutes**

18 U.S.C. § 2518(10)(c) ...........................................................................3, 14, 15

Cal. Penal Code § 631(a) ...................................................................*passim*

Electronic Communications Privacy Act of 1986,
    Pub. L. No. 99-508, 100 Stat. 1848 .......................................................................3

**Other Authorities**

S. Rep. 99-541, 1986 U.S.C.C.A.N. 3555 ...............................................................15

v

*DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FAC*

## I.   INTRODUCTION

Plaintiff Mike Goldstein sued Defendant Rumble Inc. ("Rumble"), alleging that Rumble violated the fourth clause of Section 631(a) of the California Invasion of Privacy Act ("CIPA") by aiding and abetting the Meta Pixel's "interception" of communications between Rumble and visitors to its website.  Rumble explained that Goldstein's initial complaint failed to state a claim for at least four distinct reasons, and this Court dismissed the complaint.  Dkt. 26 ("Order").  In response to the Court's decision, Goldstein filed a First Amended Complaint ("FAC") that adds the sum total of just three short paragraphs that purport to cure only one of the multiple deficiencies Rumble pointed out.  *See* Dkt. 31-1 ("Mot.").  Goldstein fails to cure even that defect. The FAC should be dismissed with prejudice.  Goldstein's opposition, Dkt. 33 ("Opp."), does not move the needle.

*First*, in order to show that Meta improperly "intercepted" any communications such that Rumble could be held liable for aiding and abetting Meta, Goldstein must plead facts that "plausibly depict the Meta Pixel as an independent third party rather than a tool used by Rumble."  Order at 1; *see Licea v. American Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023) ("*American Eagle*") (Fitzgerald, J.); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023) ("*Cinmar*") (Fitzgerald, J.).  Instead, Goldstein points to (i) conclusions copied "in lockstep" from the Court's Order, (ii) irrelevant allegations about the Meta Pixel's interaction with other websites in another country, and (iii) factual allegations that Goldstein in his opposition does not even deny are "consistent with a benign alternative explanation." Opp. at 12–13.  None of these allegations suffice to overcome the defect this Court identified in its prior dismissal order.  Finally, Goldstein offers a smattering of cases that do not even address the issue, as well as a case that expressly disagreed with the analysis applied by this Court in *American Eagle* and *Cinmar*.  Tellingly, Goldstein ignores *Cinmar* entirely.  But *American Eagle* and *Cinmar* were correctly decided, and the Court should follow its prior decisions.

*Second*, Goldstein has not pled that Meta intercepted the "contents" of any communications between Goldstein and Rumble, which is a necessary predicate for Rumble to even conceivably be liable as an aider and abettor. The statute requires a showing that a party accessed "the contents or meaning" of intercepted communications. Cal. Penal Code § 631(a). Not only are Goldstein's allegations as to himself conclusory in the extreme, but the general theory of the FAC—that the static URLs for websites the putative class members visited constitute "contents"—is squarely foreclosed by Ninth Circuit precedent holding that the "webpage address" for "a webpage a user is viewing on the internet" is "excluded . . . from the definition of 'contents.'" *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014); *accord In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020). Goldstein makes *no* attempt to distinguish these binding decisions; he instead argues that the FAC's allegations concerning the Meta Pixel satisfy his pleading obligation as to the "contents" requirement of the statute. But the cases Goldstein cites on this issue rely *not* on the mere fact that the Pixel was involved but instead on the allegations that Pixel transmitted plaintiff-specific information—such as search queries for particular ailments or prescriptions, sensitive financial information, or purchases that the plaintiff had made. Goldstein cites no case holding that the URL for a static webpage a plaintiff visited—which is at most what is pled here—constitutes "contents" under the CIPA.

*Third*, Goldstein fails to plead, as he must under the CIPA, that any interception by Meta happened "in transit." This Court explained in *American Eagle* and *Cinmar* that the "in transit" element requires a plaintiff to allege "*specific facts* as to how or when the interception takes place." *American Eagle*, 659 F. Supp. 3d at 1084 (emphasis added); *Cinmar*, 659 F. Supp. 3d at 1109–10. Goldstein has failed to do so here—which he effectively concedes by relying on *different* allegations in a *different* complaint brought against the operator of a *different* website. Goldstein also relies on other decisions that do not hold CIPA plaintiffs to the correct standards this Court has

2

applied—including a decision that expressly disagreed with *Cinmar*. In so doing, Goldstein tacitly concedes that FAC does not meet the standard that this Court has applied twice before.

*Finally*, the FAC should be dismissed because Goldstein's CIPA claim is preempted by the federal Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848. Indeed, two decisions from this District, relying on the plain language of 18 U.S.C. § 2518(10)(c), have squarely held that the ECPA expressly preempts Section 631(a) of the CIPA. *Bunnell v. Motion Picture Ass'n of America*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007); *Tysman v. Kachikian*, 2009 WL 10698361, at *7 (C.D. Cal. May 8, 2009). Goldstein simply ignores those decisions and instead cites two earlier California state cases—neither of which even cited Section 2518(10)(c) and one of which pre-dated enactment of the ECPA by 12 years. Obviously, a decision pre-dating a statute's existence cannot establish the scope of the statute's preemptive force.

For each of these reasons, Rumble respectfully requests that the Court dismiss the FAC with prejudice.[1]

## II.   ARGUMENT

Goldstein's claim against Rumble remains foreclosed for at least four separate reasons: (i) the FAC's allegations still establish that the Meta Pixel is a "mere tool" used by Rumble and thus do not show that Rumble aided and abetted interception of any communication by Meta, (ii) Goldstein has not pled that the Meta Pixel read the "contents" of any communication, (iii) Goldstein has failed to plead facts sufficient to

---

[1] Rumble agrees with Goldstein that the CIPA "contains no grievous ambiguity." Opp. at 4 n.1. The CIPA's plain text bars Goldstein's claim. But if the Court finds the CIPA to be ambiguous, as Judge Chhabria did, it should "adopt a narrower but equally reasonable interpretation of CIPA—one that does not encompass the conduct at issue in this case." *Doe v. Eating Recovery Center*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025).

*DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FAC*

show that any communications were intercepted "in transit," and (iv) Goldstein's claim is preempted by federal law. Nothing in Goldstein's opposition comes close to rebutting any of those arguments, as Goldstein ignores or otherwise fails to distinguish on-point decisions from the Ninth Circuit and this Court.

**A.      Goldstein Has Still Not Pled that Rumble Aided and Abetted the Meta Pixel.**

As this Court has explained, a website operator does not aid and abet a third party in violating the CIPA when "the third party's software was merely a tool used by defendant" or "the third party analyzed or used the data on behalf of or in tangent with Defendant." *American Eagle*, 659 F. Supp. 3d at 1083 (Fitzgerald, J.); *Cinmar*, 659 F. Supp. 3d at 1108 (Fitzgerald, J.); *see* Order at 1, 4. Instead, the third party must at least be able to "use[] the data for its own benefit." *American Eagle*, 659 F. Supp. 3d at 1083. Goldstein's initial complaint contained "no allegations as to what Meta did or was capable of doing after such disclosure occurred," Order at 6, and the FAC fails for the same reason. Nothing in Goldstein's opposition or the FAC shows otherwise.

The FAC adds only three new paragraphs (¶¶ 27–29), but neither the new allegations nor any others in the FAC come close to pleading *facts* that plausibly *show* that Meta used Goldstein's communications "for its own benefit." Stripped of "labels and conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Goldstein's "'new' allegations, like the old allegations, are consistent with the Pixel operating as Rumble's tool"—for the reasons Rumble has explained. Mot. at 15–17.

Goldstein's opposition offers no real response. Goldstein first argues that this Court only required him to "allege '[s]omething more,' . . . which he has." Opp. at 12 (quoting Order at 7). But Goldstein misunderstands the Court's instructions (and the law). The Court directed him to plead "[s]omething more . . . such as *facts* tending to exclude the possibility that the alternative explanation is true." Order at 6 (emphasis added). This Court did not, as Goldstein seems to believe, suggest his suit would survive dismissal if he simply pleaded *anything* more, no matter how conclusory.

4

Goldstein does not even deny that his "allegation[s] remain[] consistent with a benign alternative explanation." Opp. at 12. And as this Court explained, "a plaintiff cannot state a claim by relying on allegations that are merely consistent with liability when they are also consistent with an alternative, lawful explanation." Order at 6; *accord Iqbal*, 556 U.S. at 678.

When Goldstein does point to factual allegations, his facts show far less than he claims they do. Goldstein says his FAC "cross[es] the line of plausibility where [it] provides an example of where website visitors were bombarded with Facebook advertisements after visiting websites that had the Meta Pixel installed, from 'not just websites that had shared their data unlawfully, but others too.'" Opp. at 13 (quoting FAC ¶ 28). But his example *has nothing to do with Rumble*: It involves "a gambling website" viewed by reporters in the United Kingdom. Mot. at 16–17. Goldstein has still not alleged what the Meta Pixel does on *Rumble's* website, much less what it did when Goldstein allegedly viewed it in California.

Goldstein says his allegations are now "in lockstep with this Court's Order," Opp. at 13, but that reflects only that Goldstein inserted conclusory allegations that copy the Order. The Court stated that Goldstein did not "specify, for example, that Meta was able to use the data independently." Order at 6. So Goldstein purported to "cure that specific defect" by "alleg[ing] that Facebook 'independently uses data obtained by the Meta Pixel from Rumble.com[.]'" Opp. at 2, 13 (quoting FAC ¶ 27). But the FAC lacks any plausible "factual allegations" to substantiate that claim. Order at 6; *see* Mot. at 15–16 (explaining that FAC ¶ 27 is best read to allege that "Meta uses data from Rumble users . . . to allow Rumble to better advertise . . . [and to] increas[e] Rumble's ad revenue"). Goldstein's "formulaic recitation" of the Court's Order, without adequate factual support, does not suffice. *Iqbal*, 556 U.S. at 678.

Finally, Goldstein again puts great weight on *Gray v. Luxottica of America,* which is flatly inconsistent with this Court's decisions in *American Eagle* and *Cinmar*. 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) (cited in Opp. at 2, 3, 5, 6, 8, 10, 12–14).

5

In *Gray*, 2024 WL 5689566, at \*5, the court expressly disagreed with the decision in *Graham v. Noom*—which this Court examined and relied on at length in both *American Eagle* and *Cinmar*. *See American Eagle*, 659 F. Supp. 3d at 1083; *Cinmar*, 659 F. Supp. 3d at 1109.[2]  Moreover, *Graham*, *American Eagle*, and *Cinmar* set forth the better reading of the CIPA and California case law because they are consistent with the California Court of Appeal's seminal holding in *Rogers v. Ullrich*, 52 Cal. App. 3d 894 (1975).  In *Rogers*, the court held that a party's use of a tape recorder to record his own conversation did not violate the CIPA. *Id.* at 897–99.  Similarly, on the FAC's allegations, Meta at most "provides a tool—like the tape recorder in *Rogers*—that allows" Rumble to "aid [its own] business.  It is not a third-party eavesdropper." *Graham v. Noom*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) (citation omitted).[3]

Goldstein's other cases "do not appear to engage with the relevant pleading standard" adopted by this Court in *American Eagle*, *Cinmar*, and the previous Order in this case, alongside many other courts.  Order at 6 (identifying *Mata v. Zillow Group*, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024), which Goldstein still relies on, as failing to so engage); *see also Toy v. Life Line Screening of Am.*, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024); *Heiting v. Taro Pharms. USA*, 2024 WL 3738055 (C.D. Cal. July 31, 2024).  And, as discussed, Goldstein has failed to meet that standard here.

---

[2] Although the Order cited *Gray*, the Court relied on *Gray* for the widely accepted proposition that even if the merits may involve "factual question[s] that will turn on evidence beyond the pleadings," "the Complaint must [still] contain sufficient factual matter to make the inference of third-party interception plausible," and noted *Gray* was an "authorit[y] cited by Goldstein" that is "distinguish[able]" from the allegations here.  Order at 6.

[3] *Gray* is also inapposite because, in that case, there were far more concrete, extensive, and detailed allegations of Meta's actions than in the FAC here.  *See* 2024 WL 5689566, at \*6 (relying on allegations in the complaint (i) regarding "Facebook's 'Business Tools'" and (ii) that "the Meta Pixel allows Facebook to 'include individual patients among groups targeted by other Facebook advertisers relating to the conditions about which patients communicated on Defendant's Website'").

6

*DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FAC*

**B.** **Goldstein Has Not Pled that the Meta Pixel Read the "Contents" of His (or Anyone Else's) Communications.**

As Rumble has shown (Mot. at 11–12), Goldstein pleads almost no facts as to his own supposed communications. Nor is his FAC salvaged by speculation as to what Rumble or Meta may have done as a general matter, or what might happen in some hypothetical situation. Goldstein has not pled a plausible claim that anyone accessed the contents of his communications with Rumble.

In opposition, Goldstein argues that he need not "plead the exact communications that he had with Defendant's Website." Opp. at 11. Goldstein ignores, however, that in a putative class action such as this suit, "each Named Plaintiff at this stage must meet his or her own procedural burden under Rule 12(b)(6) and the pleading standards of *Twombly* and *Iqbal*." *Ocean S. v. L.A. Cnty.*, 2024 WL 3973047, at *14 (C.D. Cal. June 11, 2024) (quotation marks omitted). In the CIPA context, a named plaintiff must "allege that, in interacting with [a] website, they personally engaged in . . . communications with the website whose content could have been intercepted." *D'Antonio v. Smith & Wesson*, 2026 WL 446310, at *4 (N.D. Cal. Feb. 17, 2026).[4] Goldstein does not even attempt to do so. In the section of the FAC entitled "FACTS SPECIFIC TO PLAINTIFF," Goldstein alleges only that Rumble aided and abetted in the interception of his "viewing history," Compl. ¶ 36, a highly ambiguous phrase that could refer to URLs, video titles, or perhaps something else entirely. But what exactly the Meta Pixel supposedly intercepted is legally significant. Goldstein's refusal to "explain what aspects of his viewing history anyone read, learned, or used," Mot. at 12, renders his sole "allegation [too] vague, ambiguous and insufficient to put

---

[4] Goldstein's attempt to distinguish Rumble's cited cases on their facts (Opp. at 11) ignores the voluminous caselaw requiring individualized allegations from CIPA plaintiffs. *See D'Antonio*, 2026 WL 446310, at *4 (collecting cases).

7

Defendant[] on notice of the basis for Plaintiff's claim," *Jappa v. California*, 2009 WL 1396364, at \*5 (S.D. Cal. May 15, 2009).

Putting aside the named-plaintiff-specific problems with the FAC, the pleading's general theory of liability appears to be that the "URL[s]" (*i.e.*, the web addresses) of the webpages that visitors to rumble.com accessed are necessarily "contents" under the CIPA. But that notion is foreclosed by Ninth Circuit precedent. In *In re Zynga Privacy Litigation*, the Ninth Circuit held that while a URL *might* constitute the "contents" of a communication when it "shows the specific search terms the user had communicated to" the website, it is *not* "contents" when it contains only "[i]nformation about the address of the . . . webpage the user was viewing." 750 F.3d 1098, 1108 (9th Cir. 2014). Notably, in *Zynga*, the Circuit squarely rejected the notion that "the user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage was sent" constituted "contents" under the ECPA. *Id.* at 1107; *see, e.g.*, *id.* at 1108 (rejecting argument that "webpage addresses" showing closeted Facebook user's visit to a "gay support group" page constituted "contents" of a communication).[5] As the Ninth Circuit explained: "Information about the address of the Facebook webpage the user was viewing" was not necessarily the same as conveying "a search term or similar communication, and therefore does not constitute the contents of a communication." *Id.* at 1108–09.

Goldstein makes zero attempt to distinguish *Zynga*, which is of course controlling authority and which has been cited for the precise proposition that the identity of webpages visited, standing alone, is not "contents" as the CIPA uses that term. *See, e.g.*, *Yoon v. Lululemon USA*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021). Nor does he even acknowledge the Ninth Circuit's subsequent decision—in a CIPA

---

[5] Though *Zynga* concerned "contents" under the ECPA, the "CIPA borrows the definition of protected 'contents' from the federal [ECPA]." *Heiting v. Taro Pharms. USA*, 728 F. Supp. 3d 1112, 1123 n.9 (C.D. Cal. 2024). Therefore, the analysis is the same under each statute. Mot. at 9 n.3.

*DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FAC*

case—which held that URLs that "emanate from search terms inputted into a third-party search engine" but not URLs that "revealed only that a Facebook user had clicked on a link to a [particular] website"—can constitute "contents." *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020). Unlike the complaint in *Facebook Internet Tracking*, the FAC here does not allege that the transmitted URLs at issue could contain user-generated search terms.

Instead, Goldstein's only substantive response is that this case, unlike *Zynga* and *Facebook Internet Tracking*, involves the Meta Pixel. Opp. at 8. But the very authorities cited by Goldstein make clear that what matters is the *nature* of the supposed "contents," and none of Goldstein's cases hold that a static URL alone constitutes the "contents" of a communication under the CIPA.

Take, for instance, *Gershzon v. Meta Platforms*, where the complaint alleged that the Pixel transmitted "substantive and personal" information," including that the plaintiff "communicated with the DMV in order to apply for a disability parking placard and later to check on the status of that application." 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) (cited in Opp. at 9). Goldstein's other cases are in a similar vein:

- In *In re Meta Pixel Healthcare Litig.*, the plaintiff alleged that the Pixel transmitted information showing the plaintiffs' specific search queries, including for particular ailments such as cancer and ulcerative colitis. 647 F. Supp. 3d 778, 786 (N.D. Cal. 2022) (cited in Opp. at 9).

- In *Smith v. Google, LLC*, the complaint alleged transmission of "sensitive financial information." 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (cited in Opp. at 8–9).

- In *Castillo v. Costco Wholesale Corp.*, the defendant disclosed that the plaintiffs "searched for specific prescriptions." 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (cited in Opp. at 8).

9

- In *Mata v. Zillow Group*—which Goldstein cites on five pages of his brief—the court specifically relied on allegations that the Pixel "has access to the content of individuals' searches on websites."  2024 WL 5161955, at *5 (S.D. Cal. Dec. 18, 2024) (cited in Opp. at 3, 6, 8, 10, 14).

- In *Saleh v. Nike*, the complaint alleged that the third-party software recorded *all* of the plaintiff's "in-browser interactions, which include[d] *any* 'content' information Plaintiff sent to" the defendant—including the "customer's purchasing selections and other content communications to [the] website owner."  562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (emphasis added) (cited in Opp. at 8).

Goldstein's reliance on *In re Vizio Consumer Privacy Litigation* is similarly puzzling, as the allegedly "intercepted data" extended "beyond metadata to 'samples' of the *actual content* displayed on a consumer's screen."  2017 WL 11420284, at *6 (C.D. Cal. July 25, 2017) (emphasis added).[6]

Compare the allegations in the foregoing cases to the barebones allegations Goldstein makes here—namely, that the Meta Pixel transmits a "video request" by a Rumble user "in the form of a URL request."  FAC ¶¶ 21–22 (giving an example of transmission of a lengthy URL).  Thus, Goldstein is wrong to claim that what he has pled is on all fours with *Vizio* (let alone the other cases he cites).  The *Vizio* court was clear that the intercepted contents included far more than mere static URLs—which is at most what Goldstein alleges here.

Finally, Goldstein again cites *Cole v. Quest Diagnostics* (Opp. at 8)[7] but neglects to point out that the cited decision was vacated by the court that issued it.  *See Cole v.*

---

[6] Though *Vizio* suggested that a URL can be "contents" if "someone sent a message to a friend that consisted entirely of a URL," those are not the allegations here.  2017 WL 11420284, at *6.

[7] 2024 WL 3272789 (D.N.J. July 2, 2024).  Strangely, Goldstein cited the first *Cole* decision again in his opposition without noting its subsequent vacatur, even after

*DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FAC*

*Quest Diagnostics*, 2025 WL 88703, at \*3 (D.N.J. Jan. 14, 2025) ("The Court's July 2, 2024 Order . . . is **VACATED**[.]").  A vacated order, of course, is a legal nullity. *See United States v. Recio*, 371 F.3d 1093, 1106 n.11 (9th Cir. 2004) ("vacating the former judgment[] . . . render[s] it null and void, and the parties are left in the same situation as if no trial had ever taken place" (quoting *United States v. Ayres*, 76 U.S. (9 Wall.) 608, 610 (1869)).  The Court here should look instead to the *non*-vacated decision in *Cole*, which dismissed the CIPA claim, holding that the Meta Pixel is not a mechanism for "intercepting" communications because the Pixel works by transmitting information directly from the user's browser *to* Meta (such that there is no "interception").  2025 WL 88703, at \*3.

In any event, the Ninth Circuit's decisions in *Zynga* and *Facebook Internet Tracking* control.  As pled, the Meta Pixel allegedly transmitted URLs that "revealed only that a [Rumble] user had clicked on a link" to watch a particular video—and nothing more.  *See Facebook Internet Tracking*, 956 F.3d at 605.  But clicking on a link—as opposed to typing in a search term—is not a communication, and therefore transmission of the fact that someone visited a website does not disclose the "contents" of any communication.  *See id.*; *Zynga*, 750 F.3d at 1107 ("webpage address . . . of a webpage a user is viewing on the internet" is "excluded . . . from the definition of 'contents'").  Thus, as Goldstein has failed to allege that the "contents" of his (or anyone's) communications were intercepted, dismissal is warranted.

**C.      Goldstein Has Not Pled that the Meta Pixel Intercepted His Communications "In Transit"**

To show that Meta "intercepted" his communications in violation of the second clause of Section 631(a), Goldstein must show that such "interception" happened "in transit."  Cal. Penal Code § 631(a).  As Rumble has shown—and as Goldstein ignores—"[c]ourts in the Ninth Circuit have interpreted the in transit requirement

---

Rumble noted the problem in its prior reply brief.  Dkt. 22, at 10.

narrowly." *American Eagle*, 659 F. Supp. 3d at 1084. To plead interception in transit, a complaint "must demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage." *Heiting v. Taro Pharms. USA*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). In *American Eagle*, this Court explained that to satisfy this requirement, a plaintiff must allege "*specific facts* as to how or when the interception takes place." 659 F. Supp. 3d at 1084 (Fitzgerald, J.) (emphasis added). *Cinmar* is to the same effect. 659 F. Supp. 3d at 1109–10 (Fitzgerald, J.).

Goldstein fails to plead any such specific facts. In opposition, Goldstein leads with the conclusory allegation that "electronic communications are intercepted in real time while in transit by . . . [the] Meta Pixel." Opp. at 5 (citing FAC ¶ 20). But this is the same type of allegation that was rejected as insufficient by this Court in *American Eagle* and *Cinmar*: A "bare" allegation "that 'the third party . . . secretly intercept[s] (during transmission and in real time)' is conclusory and does not allege specific facts as to how or when the interception takes place, which has been found to fall short of stating a plausible claim under section 631(a)." *American Eagle*, 659 F. Supp. 3d at 1084; *see also Cinmar*, 659 F. Supp. 3d at 1110 ("Plaintiffs must provide more than conclusory allegations that messages were 'intercepted in real time.'").

Perhaps recognizing that *American Eagle* and *Cinmar* doom his case, Goldstein purports to rely on factual allegations from a *different* plaintiff in a *different* complaint concerning how the Meta Pixel worked on a *different* website. Opp. at 5–6 (citing *Gray*). In *Gray*, Judge Almadani held that it was sufficient for a plaintiff to plead that when a user accessed the "LensCrafters website, Facebook's code 'direct[ed] the user's browser to contemporaneously send a separate message to Facebook's servers . . . contain[ing] the original GET request sent to the host website, along with additional data that the [Meta] Pixel is configured to collect." 2024 WL 5689566, at *7. Putting aside that this case has nothing to do with the installation of the Pixel on the "LensCrafters website" (as well as manifold other defects), the allegations Judge

12

Almadani relied on are nowhere to be found in the FAC that Goldstein filed against Rumble here.

Indeed, if anything, *Gray* favors Rumble. In distinguishing this Court's decision in *American Eagle*, Judge Almadani expressly relied on precise allegations concerning the Facebook code that are absent in this case. *Id.* And to the extent that Goldstein purports to bolster the FAC by invoking in his opposition brief the allegations in the *Gray* complaint (which, again, did not relate to the Rumble website), it is axiomatic that "[p]laintiffs may not amend their pleading through a brief filed in opposition to a motion to dismiss." *Sweeny v. Toyota Motor Sales, USA,* 2023 WL 2628697, at *15 (C.D. Cal. Feb. 9, 2023); *see also Barrios v. L.A. Sheriff's Dep't*, 2024 WL 5413650, at *1 (C.D. Cal. Dec. 19, 2024) ("By relying on unpled allegations, Plaintiff essentially concedes the [complaint's] insufficiency.").

Goldstein's other authorities are unavailing. *Esparza v. UAG Escondido A1* recognized a split among courts on the "in transit" issue and expressly disagreed with this Court's decision in *Cinmar*. 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024). And to the extent Goldstein relies on the Southern District's decision in *Mata v. Zillow Group*, that decision relied on *Esparza* and thus is inconsistent with *Cinmar* and *American Eagle*. 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024). More to the point, *Cinmar* and *American Eagle*, not *Esparza*, are correct. The allegations in *Esparza*, "that webchats are intercepted in real time through the use of computer code," 2024 WL 559241, at *3, are (like the FAC's allegations here) not more than mere "labels and conclusions" that regurgitate the CIPA's "in transit" element, *Iqbal*, 556 U.S. at 678. The Federal Rules, *Cinmar*, and *American Eagle* require more to make out a plausible claim under the CIPA.

Accordingly, the FAC should be dismissed for failure to plead facts showing that the supposed "interception" happened "in transit."

13

**D.    Section 631(a)'s Private Right of Action Is Preempted.**

Finally, as Rumble has shown (Mot. at 17–20), Section 631(a)'s private right of action is preempted by the federal ECPA.  Indeed, several decisions from within this Circuit have expressly held as much.  *See Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007); *Tysman v. Kachikian*, 2009 WL 10698361, at *7 (C.D. Cal. May 8, 2009); *In re Google Inc. Street View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1085 (N.D. Cal. 2011), *aff'd sub nom. Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013).  Tellingly, Goldstein simply ignores these decisions.

Goldstein contends that the ECPA "'does not explicitly provide for the preemption of state law,'" Opp. at 14, but that was precisely the holding in *Bunnell*.  There, the court analyzed the provision of the ECPA providing that "[t]he remedies and sanctions described in this chapter with respect to the interception of electronic communications are the *only* judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications."  18 U.S.C. § 2518(10)(c) (emphasis added).[8]  The phrase "the only judicial remedies" is about as clear as it gets, but in any event, "[t]here is no 'rigid formula or rule' for determining when an act of Congress preempts a state law," *Chamber of Commerce v. Bonta*, 62 F.4th 473, 482 (9th Cir. 2023); *see also Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 112 (1992) (Kennedy, J., concurring) (the Supreme Court "ha[s] never required any particular magic words in [its] express pre-emption cases").

Instead of responding to *Bunnell*, Goldstein cites a case *not* involving the CIPA that looked to the legislative history of the ECPA to discern the supposed "purpose" of the ECPA's exclusive remedies provision.  Opp. at 15 (citing *In re NSA Telecomms.*

_____

[8] Goldstein relies on the Northern District's decision in *Valentine v. NebuAd*, which expressly disagrees with the decision in *Bunnell*.  Opp. at 14–15 (citing 804 F. Supp. 2d 1022 (N.D. Cal. 2011)).  Rumble respectfully submits that *Valentine* was wrongly decided and that this Court should adopt the well-reasoned decisions from this District in *Bunnell* and *Tysman*.

*DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FAC*

*Records Litig.*, 483 F. Supp. 2d 934 (N.D. Cal. 2007)).  No resort to legislative history is warranted here, however, as the statutory text is clear.  *See, e.g.*, *United States v. Gonzalez-Mendez*, 150 F.3d 1058, 1061 (9th Cir. 1998) ("[W]e do not consider legislative history when a statute is clear on its face.").  But even if the Court were to indulge Goldstein in this exercise, the legislative history is no friend to him.

The Senate Report cited by the *NSA* court includes discussion of a *separate* proposed provision of the ECPA (concerning law enforcement activities) containing the phrase "[u]nless prohibited by state law"—language that the Senate observed "makes clear" that that provision did "not preempt any existing state law."  S. Rep. 99-541, at 46, 1986 U.S.C.C.A.N. 3555, 3600.  By contrast, the exclusive remedy provision in Section 2518(10)(c) lacks any such statutory language or legislative commentary.  Thus, the logical conclusion is that Section 2518(10)(c) *does* preempt state law.  *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *Wyeth v. Levine*, 555 U.S. 555, 567 (2009) (when Congress "enact[ed] . . . an express pre-emption provision" in one statutory section but did "not enact[] such a provision" in another section, the latter section did not preempt state law).

Although Goldstein cites two California state cases declining to find preemption, both pre-dated this District's decisions in *Bunnell* and *Tysman*, and neither even cited the exclusive remedy provision of the ECPA.  Opp. at 14–15 (citing *Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95 (2006); *People v. Conklin*, 12 Cal. 3d 259 (1974)).  What is more, *Conklin* was a criminal case that pre-dated the ECPA by 12 years, so it necessarily could not have decided whether a federal statute not yet in existence preempted California law.  In any event, "preemption is an issue of federal law," so state-court cases have limited utility.  *Insolvency Servs. Grp. v. Federal Express*, 2014 WL 12613262, at *2 (C.D. Cal. May 7, 2014).

15

But even if there were any doubt as to whether the ECPA's text expressly preempts the civil remedy provisions of the CIPA, the "comprehensive" coverage provided by ECPA "left no room for supplementary state regulation," and thus field preemption applies. *Bunnell*, 567 F. Supp. 2d at 1154; *accord Tysman*, 2009 WL 10698361, at *7. Here again, Goldstein ignores these on-point decisions from this District—instead relying on the state-law decision in *Conklin*.[9]

*   *   *

Finally, although Goldstein once again requests leave to amend in a footnote, the Court should reject this request. Goldstein fails to provide any indication as to how he might salvage the FAC by amending it for a second time. And more fundamentally, any such amendment would be futile given that the relevant provision of the CIPA is preempted by federal law. *See, e.g.*, *Patton v. Forest Labs.*, 2017 WL 10439658, at *1 (C.D. Cal. Nov. 1, 2017) (Fitzgerald, J.); *Ruiz v. Nat'l City Bank*, 2010 WL 1006412, at *5 (E.D. Cal. Mar. 17, 2010) ("[D]ismissal with prejudice is appropriate given that the Plaintiff has been given two chances to try to plead proper claims against this Defendant.").

## III.   CONCLUSION

For the foregoing reasons, as well as those stated in Rumble's opening memorandum, Rumble respectfully requests that the Court dismiss the FAC with prejudice for failure to state a claim.

---

[9] Goldstein cites another California state case to argue that courts are supposedly "reluctant to infer preemption," Opp. at 14, but the Supreme Court has made clear that any presumption against preemption is inapplicable where, as here, the Court is not "faced with ambiguity" in the ECPA's statutory text, *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 420 (1999); *see Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016) ("[B]ecause the statute 'contains an express pre-emption clause,' we do not invoke any presumption against pre-emption").

16

Dated:  March 18, 2026

Respectfully submitted,

*/s/ Andrew B. Breidenbach*

Andrew B. Breidenbach, Esq. (Bar No. 281586)
abreidenbach@tocounsel.com
**THEODORA ORINGHER PC**
1840 Century Park East, Suite 500
Los Angeles, CA 90067
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

Gregory J. Dubinsky (*admitted pro hac vice*)
gdubinsky@hsgllp.com
Nicholas H. Hallock (*admitted pro hac vice*)
nhallock@hsgllp.com
**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Ave., 14th Floor
New York, NY 10017
Telephone: (646) 837-5151
Facsimile: (646) 837-5150

*Attorneys for Defendant Rumble Inc.*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Rumble, Inc., certifies that this brief contains 5,602 words, which:

X complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

Dated: March 18, 2026                    */s/ Andrew B. Breidenbach*

Andrew B. Breidenbach

---

*DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FAC*